**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

WILLIAM TOLBERT,

    Plaintiff,

v.

STELLANTIS N.V., *d/b/a* FCA,
U.S., LLC, and FCA, U.S., LLC,

    Defendant.

Case No.

Hon.

---

David A. Nacht (P47034)
Grace Cathryn Cretcher
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
dnacht@nachtlaw.com
gcretcher@nachtlaw.com

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff William Tolbert, by and through his attorneys, NACHTLAW, P.C., hereby alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action to remedy age and race discrimination in violation of 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

2. Plaintiff William Tolbert (hereinafter, "Plaintiff") is a 64-year-old Black resident of Wayne County, Michigan.

3. Defendant FCA US, LLC ("FCA"), is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Defendant Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. Defendant FCA is registered in Michigan and its principal place of business and headquarters is at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.[1]

4. This Court has jurisdiction pursuant to 42 U.S.C. § 1981 (race discrimination in contracts); 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

5. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims of age and race discrimination in violation of the ELCRA.

6. Venue is proper in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 621 *et seq.*, as this is the judicial district where the unlawful employment practices occurred and the relevant employment records are kept, and in which Defendants operate.

---

[1] Defendants Stellantis N.V and FCA US, LLC are referred to collectively as "Defendant."

7. Defendant is an employer and Plaintiff is an employee within the meaning of the ELCRA.

## STATEMENT OF FACTS

8. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

9. Plaintiff began working for Defendant in 2007 and maintained an excellent record throughout his employment, receiving positive reviews and multiple promotions.

10. In 2012, Plaintiff was promoted to Operations Manager of Defendant's Toledo, Ohio plant, where he also served as interim Senior Manager for the plant's body shop during its launch.

11. After a successful launch, Plaintiff was promoted to Senior Manager of the paint shop in 2013.

12. Thereafter, the Toledo Site Manager was promoted to Regional Manager and was replaced as Site Manager in Toledo by Chuck Patton.

13. Mr. Patton's aversion to Plaintiff was clear almost from the first time they spoke.

14. Despite this, Plaintiff's successful performance continued, to the point that Mr. Patton began to take credit for his good work while simultaneously reacting with hostility any time Plaintiff stood up for himself or his team.

15. Given the extremely white racial makeup of the plant's leadership, all of whom were younger than Plaintiff, and how quickly Mr. Patton singled him out for abuse because he "didn't fit in," Plaintiff perceived a clear discriminatory motivation for Mr. Patton's behavior.

16. In approximately 2015, when an issue occurred with one of Plaintiff's team members and Plaintiff spoke up on his behalf, Mr. Patton called Plaintiff into his office and proceeded to berate him in front of an HR representative for involving himself in matters involving his own subordinate.

17. Mr. Patton yelled at Plaintiff, "YOU JUST DON'T GET IT!"

18. Despite this, Mr. Patton never even attempted to explain what "it" was, during this interaction or at any time thereafter, instead sending the HR Director to speak with Plaintiff and inform him that despite his continued success, after a decade and a half, Plaintiff was simply "not a good fit" in the otherwise nearly exclusively white workplace.

19. The HR Director informed Plaintiff that he had two choices; he could choose to stay despite being told he "didn't fit in" with his younger white coworkers, or he could move to another plant and accept a demotion.

20. Plaintiff asked what he was being punished for, citing his excellent numbers, but was told by the HR Director that his "performance [did] not matter" and the issue was his ability to fit in with his younger white colleagues.

4

21. Plaintiff was offered the Operations Manager position at Defendant's plant in Sterling Heights, Michigan, although his vehicle benefits would be revoked.

22. Despite being given two bad options, Plaintiff transitioned to Operations Manager in Sterling Heights and ran the plant's night shift for several years under Site Manager Zachary Leroux.

23. Eventually, Plaintiff's vehicle benefits were restored when Mr. Leroux promoted him again, asking him to run the poorly performing paint shop at Defendant's Jefferson North Assembly Plant ("JNAP") in Detroit, which Plaintiff brought up to first-tier performance within the division.

24. Thereafter, Plaintiff was asked to move to the paint shop in Defendant's Mack plant, JNAP's adjacent sister plant within the Detroit Assembly Complex, and turn this shop around as well.

25. Unfortunately, Plaintiff was also treated with inexplicable hostility by Detroit Assembly Complex Site Manager Joe Araujo.

26. Despite Plaintiff having improved the Mack shop on all key performance indicators, Mr. Araujo constantly criticized Plaintiff in a vague and totally non-constructive way, insisting Plaintiff was "not the person" Mr. Araujo "thought he should be."

27. Although Plaintiff made it clear to Mr. Araujo that he was not clear what Mr. Araujo meant or what kind of person he was referring to, no further explanation was forthcoming, at that or any other time.

28. Despite remaining calm and raising issues and concerns in a professional manner throughout his dealings with Mr. Araujo – and in fact, his career as a whole – Mr. Araujo repeatedly reacted to Plaintiff's straightforward professionalism as if he was acting in an inappropriately aggressive, combative manner.

29. Portrayed again and again by his supervisor as an aggressive, angry Black man, it was similarly impossible for Plaintiff to ignore the racialized nature of Mr. Araujo's treatment.

30. Despite his department outperforming all other departments in the plant, as the only Black Senior Manager reporting to Mr. Araujo, Plaintiff was given a lower performance rating and lower bonus percentage than any of his less empirically successful white counterparts.

31. Chris Kingman, General Manager of the General Assembly Department, struggled to meet his key performance indicators.

32. Plaintiff was tasked with increasing Kingman's key performance indicators within the General Assembly Department.

6

33. Once Plaintiff increased Kingman's key performance indicators and significantly improved the General Assembly Department's overall performance; Kingman received a higher bonus and better performance ratings than Plaintiff.

34. Kingman is white while Plaintiff is Black.

35. Fred Legebokoff, General Manager of the Body in White Department, similarly struggled to meet his key performance indicators.

36. Plaintiff was then tasked with increasing Legebokoff's key performance indicators within the Body in White Department.

37. After Plaintiff increased Legebokoff's key performance indicators and significantly improved Body in White Department's overall performance; Legebokoff received a higher bonus and better performance ratings than Plaintiff.

38. Legebokoff is white while Plaintiff is Black.

39. Despite running the plant's top-performing department, Plaintiff was placed on a discriminatory and unjustified Performance Improvement Plan ("PIP") based on Mr. Araujo's vague, unquantifiable, and baseless critiques.

40. Thereafter, to his complete shock, Plaintiff was summarily terminated on August 12, 2022, purportedly for an unrelated but equally baseless reason: a supposed policy violation for using his free gas benefit in the same manner he had over the entirety of his career with Defendant whenever he had vehicle benefits.

41. When he was terminated, Plaintiff's vehicle benefits included two vehicles, one that was provided at no cost and one that Plaintiff leased, and he was never given any instruction or information indicating that his free gas benefit was limited to use with only one of these cars.

42. Regardless, Plaintiff never fueled a non-company issued vehicle.

43. Although his termination was the first time Plaintiff had ever heard of any such limitations on the use of his gas benefit, Plaintiff was told he was being terminated both for filling up his leased vehicle and for having family members in the car when he did so, something he himself and countless other employees had done with their family members countless times over Plaintiff's employment.

44. At all times during his employment with Defendant, Plaintiff abided by all written and verbal policies and directions he was given.

45. Despite this, Plaintiff was terminated after a decade and a half of dedicated, tireless, successful service, with no warning, progressive discipline, opportunity to address the allegations against him, or even explanation of what rule or policy he had supposedly broken, and without being offered a dime in severance.

## COUNT I
### Race Discrimination in Violation of 42 U.S.C. § 1981

46. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

47. 42 U.S.C. § 1981 grants all persons in the United States of America "the same right … to make and enforce contracts … as is enjoyed by white citizens."

48. 42 U.S.C. § 1981 prohibits all racial discrimination in the making of both private and public contracts. *Runyun v. McCrary*, 427 U.S. 160, 168, 174-175 (1976).

49. The phrase "make and enforce contracts" in 29 U.S.C. § 1981 "embrace[s] all phases and incidents of the contractual relationship…" *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994).

50. Plaintiff is Black.

51. During Plaintiff's employment with Defendant, Defendant violated Plaintiff's rights by depriving him of his right to the enjoyment of all benefits, privileges, terms and conditions of his employment in violation of 42 U.S.C. § 1981.

52. Plaintiff was treated differently, discriminated against, and ultimately terminated because of his race, in whole or part.

53. During her employment, Plaintiff did not enjoy the same benefits, privileges, or terms and conditions of employment as white employees.

54. Defendant's treatment, practices, and policies directed toward Plaintiff, as more fully described herein, denied Plaintiff the full and equal benefits of all laws and proceedings for the security of persons and property as enjoyed by other citizens in violation of 42 U.S.C. § 1981.

55. Defendant's discrimination has damaged Plaintiff as stated herein and below.

56. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

57. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT II
### Race Discrimination in Violation of the ELCRA

58. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59. At all relevant times, Defendant was an employer and Plaintiff was an employee within the meaning of the ELCRA, M.C.L. § 37.2101.

60. Plaintiff is a member of a protected class because of his race, Black.

61. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his race, including but not limited to his PIP and termination.

62. If not for Plaintiff's race, he would not have been suspended or terminated by Defendant.

63. Defendant's actions constitute unlawful discrimination against Plaintiff because of his race in violation of M.C.L. § 37.2202.

64. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## COUNT III
**Age Discrimination in Violation of the ELCRA**

65. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

66. At all relevant times, Defendant was an employer and Plaintiff was an employee within the meaning of the ELCRA, M.C.L. § 37.2101.

67. Plaintiff is a member of a protected class because of his age, 64.

68. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of his age, including but not limited to his PIP and termination.

69. If not for Plaintiff's age, he would not have been suspended or terminated by Defendant.

70. Defendant's actions constitute unlawful discrimination against Plaintiff because of his age in violation of M.C.L. § 37.2202.

71. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to, loss of earnings and earning capacity; loss of fringe and retirement benefits; mental anguish; physical and emotional distress; humiliation and embarrassment; and loss of professional reputation.

## **RELIEF REQUESTED**

For the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a. Declare the practices and actions of Defendant as unlawful in violation of 42 U.S.C. § 1981 and Michigan's ELCRA;

b. Award compensatory damages for monetary and non-monetary loss in whatever amount he is found to be entitled;

c. Award punitive, exemplary, and/or liquidated damages in whatever amount he is found to be entitled;

g. Award interest, costs, and reasonable attorney fees; and

h. Award whatever other relief this court finds appropriate.

Respectfully submitted,

NACHTLAW, P.C.

*/s/* David Nacht
David A. Nacht (P47034)
*Attorneys for Plaintiff*

Date: June 26, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM TOLBERT,

    Plaintiff,                                Case No.

v.                                         Hon.

STELLANTIS N.V., *d/b/a* FCA,
U.S., LLC, and FCA, U.S., LLC,

    Defendant.

---

David A. Nacht (P47034)
Grace Cathryn Cretcher
NACHTLAW, P.C.
Attorneys for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, Michigan 48108
(734) 663-7550
dnacht@nachtlaw.com
ccretcher@nachtlaw.com

---

## **PLAINTIFF'S DEMAND FOR TRIAL BY JURY**

Plaintiff William Tolbert, by and through his attorneys, NACHTLAW, P.C., hereby demands a trial by jury as to all those issues so triable as of right.

                                                                  Respectfully submitted,

                                                                  NACHTLAW, P.C.

                                                                   */s/* David Nacht
                                                                  David A. Nacht (P47034)
Date: June 26, 2025                                *Attorneys for Plaintiff*